UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DARREN ELLIOTT,

        Petitioner,

— against —

UNITED STATES OF AMERICA,

        Respondent.

**17-cr-128 (ARR)**
**19-cv-5884 (ARR)**

**Not for print or electronic publication**

**Opinion & Order**

ROSS, United States District Judge:

      In January 2018, petitioner Darren Elliott pleaded guilty to a violation of 18 U.S.C. § 924(c)(1)(A)(i) for using and carrying a firearm during and in relation to Hobbs Act robbery conspiracy and attempted Hobbs Act robbery. I subsequently sentenced him to sixty months' imprisonment. Through counsel, he now brings a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. He argues that the predicates supporting his conviction are not crimes of violence in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and that he received ineffective assistance of counsel. The government opposes, arguing that Elliott waived the right to collaterally attack his conviction when he pleaded guilty and that his ineffective assistance of counsel claim is meritless. For the reasons set forth below, Elliott's petition is denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

      Petitioner Darren Elliott participated in one robbery and two attempted robberies of jewelry stores in Franklin Square, New York. *See* Gov't's Mem. of Law in Opp'n to Def.'s Habeas Pet. 3, ECF No. 115 ("Gov't Br.").[1] First, in August 2011, Elliott planned and helped to successfully

---

[1] In its sentencing memorandum filed in August 2018 in connection with Elliott's criminal case,

execute a jewelry store robbery. *Id*. at 3. Armed, Elliott and an associate zip tied the store's owner by his wrists and fled with more than $200,000 in merchandise. *Id.* Next, in January 2012, Elliott attempted to rob another jewelry store. *Id.* Elliott zip tied the owner of this store, too, and an associate pointed a firearm at the owner at close range. *Id.* at 3–4. Elliott and his associate then jumped over the counter and led the owner to a back room, where Elliott grabbed him by the shirt and pushed him deeper into the room. *Id.* at 4. Finally, in May 2012, Elliott attempted to rob a third jewelry store. *Id.* at 3. During this attempted robbery, Elliott's associate shocked the store's owner with a Taser. *Id.* at 4.

In March 2017, Elliott was charged in an indictment with Hobbs Act robbery conspiracy (Count Three), attempted Hobbs Act robbery (Count Four), and possessing and brandishing a firearm during and in relation to a crime of violence (Count Five). Indictment Def.'s Ex. C at 2–3, ECF No. 112-4. On January 10, 2018, Elliott pleaded guilty, pursuant to a plea agreement with the government, to a lesser included offense within Count Five—using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Plea Agreement Gov't Ex. A ¶¶ 1–2, ECF No. 115-1; Tr. of Pleading Gov't Ex. B at 9:14–10:6, ECF No. 115-2. The predicate crimes of violence were those charged in Counts Three and Four. *See* Plea Agreement ¶ 2; Tr. of Pleading 7:5–10:6. The government estimated an advisory sentencing range of sixty months' imprisonment, the mandatory minimum sentence, Plea Agreement ¶ 3; Tr. of Pleading 15:9–10, and agreed to dismiss Counts Three and Four, *see* J. in a Criminal Case 1, Oct.

---

the government noted that Elliott's Presentence Investigation Report ("PSR") contained "a few mistakes" regarding the facts of the robberies. Gov't Sentencing Mem. 1 n.1, ECF No. 94. I subsequently entered an order indicating that the government's sentencing memorandum amended the PSR's factual descriptions. *See* Order Modifying PSR, ECF No. 110; Gov't Br. 3 n.1. Accordingly, I refer to the factual descriptions of the robberies as set forth in the government's brief in opposition to Elliott's instant petition, as these descriptions align with those in the government's sentencing memorandum.

2

18, 2018, ECF No. 102 ("Oct. 2018 J."); Gov't Br. 4.

As part of his plea agreement, Elliott "agree[d] not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 65 months or below." Plea Agreement ¶ 5. However, this waiver did not apply to claims of ineffective assistance of counsel. *See id.* On October 18, 2018, I sentenced Elliott to sixty months' imprisonment followed by three years of supervised release. *See* Oct. 2018 J. 2–3. Elliott did not file a direct appeal.

In June 2019, the Supreme Court of the United States decided *United States v. Davis*, 139 S. Ct. 2319, changing the landscape of criminal prosecutions under § 924(c).[2] Section 924(c)(1)(A)—the provision under which Elliott pleaded guilty—prescribes mandatory minimum criminal penalties for using or carrying a firearm "during and in relation to any crime of violence[.]" § 924(c)(1)(A); *Davis*, 139 S. Ct. at 2324. Section 924(c)(3)(B) (the "residual clause") defined "crime[s] of violence" to include a felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B); *Davis*, 139 S. Ct. at 2324. *Davis* held this residual clause "unconstitutionally vague." 139 S. Ct. at 2336. Thus, *Davis* prohibits a § 924(c)(1)(A) conviction if the purported underlying "crime of violence" meets that definition solely by reference to the residual clause.

Accordingly, on October 17, 2019, through counsel, Elliott filed a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. *See* Mot. Under 28 U.S.C. § 2255, ECF No. 112 ("Habeas Pet."). He asks that I (1) vacate his conviction and dismiss the indictment or (2)

---

[2] I provide only a brief overview of *Davis* because the merits of Elliott's *Davis* claim are not in dispute. *See* Gov't Br. 2 (acknowledging that Elliott "has a legitimate *Davis* claim").

resentence him "to time served or a substantially reduced sentence." *Id.* at 13. He brings this petition on two grounds. First, he argues that in light of *Davis*, the Hobbs Act predicates underlying his § 924(c) conviction are not crimes of violence and cannot support his conviction. *See* Habeas Pet. 5; Pet'r's Mem. in Supp. of Habeas Pet. 5, ECF No. 112-1 ("Pet'r's Br.").[3] Second, he argues that he received ineffective assistance of counsel in the process of pleading guilty because he "was never advised by defense counsel at the time that [§ ]924(c) was an unconstitutional statute nor was he advised by counsel that appellate litigation was pending regarding the constitutionality of 924(c) which would have affected [his] decision to plead guilty . . . ." Habeas Pet. 6. The government opposes, and Elliott did not submit a reply to the government's brief in opposition.

For the reasons set forth below, I deny Elliott's petition, and I decline to hold an evidentiary hearing.

## DISCUSSION

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Elliott challenges his sentence pursuant to § 2255 on the grounds that (1) his conviction and sentence cannot stand after *Davis*, and (2) he received ineffective assistance of counsel. I address each of these arguments in turn.

### I. Elliott's waiver of the right to bring a § 2255 petition precludes his *Davis* claim.

Elliott argues that I should vacate his § 924(c) conviction in light of *Davis*. Habeas Pet. 5.

---

[3] When citing the petitioner's brief, I refer to the page numbers as marked by the ECF header at the top of each page, as petitioner's counsel has not used a consistent page numbering system.

The government concedes that Elliott "has a legitimate *Davis* claim" but argues that Elliott "waived any challenges to his conviction," including the instant challenge. Gov't Br. 2; *see* Plea Agreement ¶ 5 (waiving collateral challenges). Elliott's brief in support of his petition is silent on the issue of waiver, and he has submitted no reply to the government's opposition.

Generally, "a waiver of the right to bring a motion to vacate under section 2255 is enforceable as long as the petitioner's waiver is knowing and voluntary." *Grant v. United States*, Nos. 11 Civ. 5639(RMB)(GWG), 09 Cr. 1220(RMB), 2012 WL 163780, at *1 (S.D.N.Y. Jan. 19, 2012), *report & recommendation adopted by* 2012 WL 1228091 (S.D.N.Y. Apr. 6, 2012). A few "very circumscribed" exceptions limit this presumption that a waiver is enforceable. *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). First, a waiver of the right to petition under § 2255 "is not enforceable where there is 'an attack on the validity of the process by which the waiver has been procured . . . .'" *Grant*, 2012 WL 163780, at *1 n.3 (quoting *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195 (2d Cir. 2002)). Accordingly, "[a]n ineffective assistance of counsel claim" that "relate[s] directly to the process by which the waiver was procured" is a valid "challenge to the enforceability of a waiver." *Rodriguez v. United States*, No. 3:16-CV-1784 (JCH), 2019 WL 5552325, at *3 (D. Conn. Oct. 25, 2019) (citing *Frederick*, 308 F.3d at 195); *cf. United States v. Monzon*, 359 F.3d 110, 118–19 (2d Cir. 2004) ("The appeal waiver would be unenforceable if the record of the criminal proceeding revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious.").

Additionally, a waiver of the right to bring a § 2255 petition is unenforceable when the defendant did not make it "knowingly, voluntarily, and competently," *Gomez-Perez*, 215 F.3d at 319 (citing *United States v. Ready*, 82 F.3d 551, 556–57 (2d Cir. 1996)); when the court imposed a sentence "based on constitutionally impermissible factors, such as ethnic, racial, or other

prohibited biases," *Gomez-Perez*, 215 F.3d at 319 (citing *United States v. Jacobson*, 15 F.3d 19, 22–23 (2d Cir. 1994)); "when the government breached the plea agreement," *Gomez-Perez*, 215 F.3d at 319 (citing *United States v. Rosa*, 123 F.3d 94, 98 (2d Cir. 1997)); "or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus 'amount[ing] to an abdication of judicial responsibility subject to mandamus[,]'" *Gomez-Perez*, 215 F.3d at 319 (quoting *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995)).[4]

Elliott's waiver of the right to bring a § 2255 petition is enforceable. Elliott does not argue that his waiver was not knowing or voluntary. *See Garcia-Santos v. United States*, 273 F.3d 506, 508 (2d Cir. 2001) (affirming determination that waiver of appeal and collateral attack was knowing and voluntary when petitioner did not claim in § 2255 motion that he had not understood waiver in plea agreement). Nor does he argue that the government breached the plea agreement or that I sentenced him based on constitutionally impermissible factors or without enunciating any rationale.

Elliott's ineffective assistance of counsel claim does not render his waiver unenforceable. First, Elliott does not argue that he received ineffective assistance of counsel related "directly to the process by which the waiver was procured." *Rodriguez*, 2019 WL 5552325, at *3. Although he does claim ineffective assistance of counsel in connection with his "[p]lea [p]rocess," he does not directly link the purported ineffective assistance to his counsel's negotiation of the waiver in particular. Habeas Pet. 6; *see* Pet'r's Br. 12–15. Even if Elliott had sufficiently tethered his ineffective assistance claim to the process by which the waiver came about, that claim would not render his waiver unenforceable because, as discussed below, his ineffective assistance of counsel

---

[4] The government posits that a successful "actual[] innocence" claim "might excuse a collateral review waiver." Gov't Br. 13. Because Elliott has not raised an actual innocence claim in his petition, I do not decide whether such a claim would excuse his waiver.

claim is meritless.

Nor does the fact that Elliott raises a *Davis* claim render his waiver unenforceable. Courts in this circuit have consistently rejected § 2255 petitions and direct appeals when criminal defendants waived those challenges in their plea agreements, even when the law subsequently changed in those defendants' favor. *See Sanford v. United States*, 841 F.3d 578, 579–81 (2d Cir. 2016) (finding collateral attack waiver enforceable when petitioner argued *Johnson v. United States*, 135 S. Ct. 2551 (2015), rendered his sentence unconstitutional); *United States v. Blackwell*, 651 F. App'x 8, 9–10 (2d Cir. 2016) (summary order) (rejecting *Johnson* challenge to sentence on direct appeal because waiver of right to appeal in plea agreement was enforceable); *Northover v. United States*, Nos. 16-CV-6086 (KMK), 11-CR-630 (KMK), 2019 WL 6173704, at *4 (S.D.N.Y. Nov. 19, 2019) (holding that waiver of § 2255 challenge in plea agreement foreclosed *Johnson* claim); *Rodney v. United States*, Nos. 11-CR-00303-3 (NGG), 16-CV-3418 (NGG), 2019 WL 2571150, at *1–2 (E.D.N.Y. June 20, 2019) (rejecting *Johnson* challenge to conviction when petitioner waived collateral attack in plea agreement); *see also United States v. Morgan*, 406 F.3d 135, 137 (2d Cir. 2005) ("[T]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements."); *United States v. Bermeo Romero*, Nos. 15-CR-102, 19-CV-2234, 2019 WL 3287182, at *2–3 (E.D.N.Y. July 22, 2019) ("In any event, even if [subsequent constitutional law] did apply, [petitioner] waived his right to collateral review of his conviction in his plea agreement."); *Adesina v. United States*, 461 F. Supp. 2d 90, 95 (E.D.N.Y. 2006) ("[A] knowing and voluntary waiver of [the] right to challenge his conviction or sentence under § 2255 is binding in its preclusive effect, even as to constitutional arguments that arise due to subsequent changes in the law that the parties could not have anticipated at the time of the plea agreement.").

Thus, Elliott's waiver of the right to bring a § 2255 petition precludes his *Davis* claim.

**II.     Elliott's ineffective assistance of counsel claim fails on the merits.**

To show that he received ineffective assistance of counsel, petitioner must first "show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

To show that counsel performed deficiently, petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). I "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. Additionally, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.*

To show that counsel's deficient performance prejudiced him, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When the petitioner claims ineffective assistance of counsel after accepting a guilty plea, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If a petitioner does not make a sufficient showing of either deficient performance or prejudice, his ineffective assistance of counsel claim fails. *See Strickland*, 466 U.S. at 697.

Here, Elliott has not plausibly argued that his plea counsel performed deficiently. As a preliminary matter, although Elliott's present counsel attached several exhibits to his brief, none of them support his ineffective assistance of counsel claim, nor does he argue that they do. Instead, Elliott relies solely on the arguments in his brief. Elliott claims that he received ineffective assistance of counsel in the process of pleading guilty because his attorney did not advise him "that [§ ]924(c) was an unconstitutional statute" or "that appellate litigation was pending regarding the constitutionality of 924(c)[,] which would have affected [his] decision to plead guilty . . . ." Habeas Pet. 6; *see* Pet'r's Br. 13. Elliott pleaded guilty on January 10, 2018. At that time, counsel could not have advised him that § 924(c)'s residual clause was unconstitutional because the U.S. Supreme Court had not yet decided *Davis*. The residual clause was also not unconstitutional under this circuit's case law. *See Davis*, 139 S. Ct. at 2325 n.2 (indicating that prior to *Davis*, the U.S. Court of Appeals for the Second Circuit had not held the residual clause unconstitutional).

Further, if counsel did not advise Elliott "that appellate litigation was pending regarding" the residual clause's constitutionality, Habeas Pet. 6; *see* Pet'r's Br. 13, counsel did not perform unreasonably. Elliott has not identified which specific case, if any, was "pending" when he pleaded guilty. The U.S. Supreme Court granted certiorari in *Davis* on January 4, 2019—after Elliott pleaded guilty and after I sentenced him. *See United States v. Davis*, 139 S. Ct. 782 (2019) (mem.). The *Davis* litigation originated in the Fifth Circuit; thus, it was not "pending" in the Second Circuit during Elliott's plea-bargaining process. To the extent that any other relevant litigation was "pending" in this circuit when Elliott pleaded guilty, Elliott has not named any particular case and has therefore failed to sufficiently "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.[5] Further,

---

[5] It is true that litigation leading to the Second Circuit's September 2018 decision in *United States*

Elliott's counsel would not have performed deficiently by failing to anticipate that the law might change, especially given the "strong presumption" that counsel performed reasonably. *Id.* at 689; *see Tellado v. United States*, 745 F.3d 48, 55–56 (2d Cir. 2014) (rejecting argument that counsel performed deficiently by failing to anticipate change in law announced after defendant's guilty plea and sentencing and finding it reasonable to rely on the law as it stood at time of counsel's conduct); *McCoy v. United States*, 707 F.3d 184, 188 (2d Cir. 2013) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001)) ("'[A]n attorney is not required to forecast changes or advances in the law' in order to provide effective assistance."); *see also Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir. 1990) ("In effect, [petitioner] argues that his counsel should have realized that the Supreme Court was planning a significant change in the existing law, and that the failure to anticipate this change rises to the level of constitutional ineffectiveness. We repeatedly have been unwilling to hold attorneys to such a high standard.").

In addition, I must presume that counsel's actions "might be considered sound trial strategy," and Elliott has offered no evidence or argument to overcome this presumption. *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101). It is plausible that counsel "elect[ed] to forego litigating the validity of the § 924(c) charge because he chose instead to secure a plea with a significantly lower Guidelines range than [Elliott] would otherwise have faced" if he had pleaded guilty to either the Hobbs Act robbery conspiracy (Count Three) or the attempted Hobbs Act robbery (Count Four). Gov't Br. 15. Such a strategic decision would have been reasonable.

---

*v. Barrett* was ongoing when Elliott pleaded guilty, though Elliott does not name *Barrett* in his petition or brief. *See* 903 F.3d 166, 172 (2d Cir. 2018) (describing procedural history), *vacated*, 139 S. Ct. 2774 (2019) (mem.). Even if failing to advise Elliott of this case before Elliott pleaded guilty were deficient performance—which it is not—Elliott has not raised a plausible claim of prejudice, as discussed below. Further, *Barrett* ultimately held the § 924(c) residual clause *constitutional*, making it difficult to see how awaiting the Second Circuit's *Barrett* decision would have helped Elliott. *See* 903 F.3d at 178.

Even if Elliott had shown that his attorney performed deficiently, he has not plausibly argued that he suffered prejudice as a result. Elliott argues that counsel's allegedly deficient advice prejudiced him because absent this advice, "there is a reasonable probability that the outcome of his plea process would have been different" and that he could have "received a substantially reduced sentence." Pet'r's Br. 14. He goes on to argue that his plea counsel's advice "undermine[d] confidence in the reliability of his plea process." *Id.* at 14–15. None of these claims, if proven, would satisfy the *Hill* standard: to show prejudice, a petitioner who pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59; *see also United States v. Arteca*, 411 F.3d 315, 322 (2d Cir. 2005) (upholding district court's decision not to accept conclusory assertion that defendant would have gone to trial if not for deficient advice); *Remache v. United States*, No. 01–CV–2440 (ILG), 2002 WL 718972, at *3 (E.D.N.Y. Mar. 27, 2002) (holding that petitioner could not show prejudice when "he stated no basis for his conclusion, except for his own speculation, that he would have received a shorter sentence" if not for deficient performance).

In fact, it is implausible that Elliott would have rejected his guilty plea and gone to trial if he had received the advice that he now asserts he should have received. As a result of his guilty plea to the § 924(c) charge, Elliott received a sentence of sixty months' imprisonment, and the government agreed to dismiss the Hobbs Act charges. *See* Oct. 2018 J. 1–2. Taking into consideration the seriousness and violence of Elliott's actions, it is overwhelmingly likely that Elliott would have received a significantly higher sentence if he had not pleaded guilty to the § 924(c) charge and instead been convicted under the Hobbs Act. If, for example, Elliott had pleaded guilty to Count Three or Four, his sentence under the United States Sentencing Guidelines could

have ranged from approximately 97 to 135 months' imprisonment. Gov't Br. 17–18 n.7.[6] Thus, Elliott has not plausibly argued that he suffered prejudice, and his ineffective assistance of counsel claim is meritless.

### III. I decline to grant a hearing or leave for discovery.

When resolving a § 2255 petition, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . ." 28 U.S.C. § 2255(b). The Second Circuit interprets this provision "as requiring a hearing in cases where the petitioner has made a 'plausible claim' of ineffective assistance of counsel." *Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (quoting *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009)). To decide whether a hearing is necessary, I must review the petitioner's motion and exhibits, along with "relevant portions of the record in the underlying criminal proceeding." *Puglisi*, 586 F.3d at 213. I must then determine "whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a *prima facie* case for relief." *Id.* I should hold a hearing "[i]f material facts are in dispute[.]" *Id.* However, "[t]o warrant plenary presentation of evidence, the application must contain assertions of fact that a petitioner is in a position to establish by competent evidence." *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987) (citing *Machibroda v. United States*, 368 U.S. 487, 495–96 (1962)). "Airy generalities" and "conclusory assertions . . . will not suffice because none of these would be admissible evidence at a hearing." *Aiello*, 814 F.2d at 113–14 (citing *United States v. Franzese*, 525 F.2d 27, 31 (2d Cir. 1975)).

---

[6] Because Elliott has not submitted a reply to the government's brief in opposition to his petition, I accept the government's calculations of Elliott's Guidelines ranges for the purpose of this decision only.

Here, a hearing is not necessary because the motion, files, and records conclusively establish that Elliott is not entitled to relief. *See* § 2255(b). First, Elliott has not submitted any argument that his *Davis* claim survives the waiver in his plea agreement. Second, Elliott has not made a plausible claim of ineffective assistance of counsel. *See Morales*, 635 F.3d at 45. In *Puglisi*, the "sole statement asserting" the "critical fact" necessary to show prejudice appeared in the petitioner's memorandum of law, which his counsel wrote and filed in support of his § 2255 petition. *See* 586 F.3d at 216. Further, the petitioner "failed to proffer any objective evidence" to show "a significant disparity" between the sentence he would have received if he had pleaded guilty and his sentence after trial. *Id.* at 217. The Second Circuit held that a hearing "would be fruitless" and affirmed denial of the petitioner's § 2255 petition, reasoning that the petition did not raise a "plausible claim" for relief under § 2255. *Id.* at 217–18. Like in *Puglisi*, the only purported facts offered in support of Elliott's petition appear in the brief that his counsel wrote, as Elliott did not submit any sworn statements of his own. Further, like in *Puglisi*, Elliott proffers no evidence to show a significant disparity between his sixty-month sentence and the sentence he would have received if he had rejected his plea offer and gone to trial; rather, his counsel merely asserts in his brief that "but for counsel's unprofessional advice there is a reasonable probability that Mr. Elliot [sic] could have received a substantially reduced sentence." Pet'r's Br. 14. Thus, Elliott has similarly failed to raise a plausible claim for relief, and a hearing would be fruitless. *Cf. Aiello*, 814 F.2d at 114 (remanding for hearing when submitted affidavits revealed genuine issues of material fact that warranted further exploration).

Elliott also requests leave for discovery. Pet'r's Br. 4. Under Rule 6(a) of the Rules Governing § 2255 Proceedings, I "may, for good cause, authorize a party to conduct discovery . . . in accordance with the practices and principles of law." R. Governing § 2255 Proceedings 6(a).

The "petitioner bears a heavy burden in establishing a right to discovery." *Pizzuti v. United States*, 809 F. Supp. 2d 164, 176 (S.D.N.Y. 2011) (quoting *Ruine v. Walsh*, No. 00 Civ. 3798(RWS), 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005)). To show the "good cause" that Rule 6(a) requires, the petitioner must present "specific allegations" that create "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Pizzuti*, 809 F. Supp. 2d at 176 (quoting *Ruine*, 2005 WL 1668855, at *6). I may deny a discovery request if "the petitioner provides no specific evidence that the requested discovery would support his habeas corpus petition." *Pizzuti*, 809 F. Supp. 2d at 176 (quoting *Ruine*, 2005 WL 1668855, at *6). "Generalized statements regarding the possibility of the existence of discoverable material will not be sufficient to establish the requisite good cause." *Pizzuti*, 809 F. Supp. 2d at 176 (quoting *Ruine*, 2005 WL 1668855, at *6).

Here, Elliott has requested discovery to develop evidence that "will materially support [his] allegations . . . as to the 'performance' of counsel . . . ." Pet'r's Br. 4. In particular, he seeks to question his plea counsel "as to the reasons for his failures complained of herein." *Id.*

Petitioner has not shown good cause for discovery. First, Elliott's allegations do not amount to deficient performance, so plea counsel's "reasons" for performing as he did are irrelevant. Second, even if plea counsel's performance were deficient, Elliott has not raised a plausible claim of prejudice, and discovery as to counsel's performance would be fruitless.

Thus, I decline to hold a hearing and deny Elliott's request for discovery.

## CONCLUSION

For the foregoing reasons, Elliott's petition is denied in full. Because he has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. However, petitioner may make such an application to the

Second Circuit. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

Dated: December 2, 2019  /s/
Brooklyn, New York  Allyne R. Ross
United States District Judge